IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11CV383

| | |
|---|---|
| ALLISON SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| THE PRESBYTERIAN HOSPITAL, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court upon Defendant's Motion for Summary Judgment. The motion has been fully briefed and is ripe for disposition.

**FACTUAL BACKGROUND**

Allison Scott ("Scott"), a former employee of the Defendant alleges that she was wrongfully terminated because of her disability and/or because she was regarded as having a disability, in violation of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008.

Scott is a registered nurse who currently suffers from lupus and attention deficit disorder, among other medical conditions. In the 1990's she worked at Carolinas Medical Center ("CMC") and developed an addition to morphine. In 1999, she was caught diverting narcotics, terminated by CMC and charged with embezzlement of a controlled substance. Scott entered a voluntary drug treatment program run by the North Carolina Board of Nursing ("BON") called the Alternative Program ("AP"). This program allows nurses struggling with addiction issues to retain their license, avoid public discipline and address the addiction issues under strict but non-

1

punitive conditions. After several months of successful drug treatment, the BON allowed Scott to find work as a nurse on a restricted license. It limited her ability to dispense medicines or work in certain roles and environments. Scott also entered deferred prosecution as part of this process and a year later had the felony charges dismissed and expunged. To successfully finish the AP, Scott had to remain actively employed under BON supervision for three complete years. Any job she held during that time had to be pre-approved by the BON, and at every job interview, Plaintiff was required to disclose her drug abuse history.

Defendant hired Scott in February of 2000 in a call center position where she performed patient "triage" by telephone. At the time she was hired, Defendant was aware of Scott's license restrictions. Plaintiff disclosed to Defendant her drug abuse history and the fact she was in the AP when applying and interviewing for the job. A BON representative participated in the job interview to make sure Plaintiff made those disclosures.

When the call center where she was working was closed, Scott applied for and was offered a staff nurse position in the Presbyterian psychiatric unit. Her immediate supervisor, Kim Kerns, was aware of her license restrictions when she was hired. Eighteen months into her new position, Scott completed her three year AP. In early 2008, Scott began suffering from increasing medical issues caused by lupus, spinal stenosis and depression. She requested and was granted intermittent leave under the Family and Medical Leave Act ("FMLA").

Scott worked as a staff nurse in the psychiatric unit without incident from September of 2001 until December of 2009. On December 26, 2009, an anonymous caller to Presbyterians' Alertline, a telephone hotline available to all Presbyterian employees, reported that Scott had been seen diverting patient medications on several occasions. Scott was immediately suspended pending an investigation into the allegation and asked to submit to a drug test. Kerns ordered a

90 day report showing all narcotics administered by the Plaintiff. The report revealed more than fifty charting errors by the Plaintiff. Kerns sent an email on December 30, 2009 to eight of Defendant's managers, including her two bosses, Larry Elmore and Bruce Melosh. Her email and the attached report shared the same name, "Allison Scott-Diversion Tracking" and the body of the message stated "there are obviously issues."

On January 5, 2010, Scott met with Kerns to discuss the charting errors. At Kerns' request, Scott submitted a written statement regarding the charting errors. Scott denied diverting any medications. Scott did explain that she had been having difficulty focusing and completing tasks and had been under a physician's care. She explained that her medical issues had impacted her ability to function at work.

The results of Scott's drug test came back negative on January 11, 2010. However, on January 15, Kerns terminated Scott's employment. Kerns told Scott that Paula Vincent, Defendant's head of nursing services, had made the final decision to terminate her. Scott claims that Kerns stated that Vincent made the decision to terminate her because she believed that Scott had relapsed into drug use. Defendant takes the position that Scott was terminated because of her charting errors. However, Scott has produced Defendant's disciplinary records which provide some evidence that she was treated differently from other employees who were disciplined in some manner over drug use or issues regarding the administration of drugs.

**DISCUSSION**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a

weighing of the evidence. Anderson v. Liberty Lobby, 477 U.S. 242 (1986).

Plaintiff brings her claims pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. which provides that an employer shall not discriminate in any "terms, conditions and privileges of employment" against an employee with a disability because of the employee's disability. 42 U.S.C. § 12112(a). In 2008, Congress made substantial changes to the ADA through the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009, and therefore apply to this case. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an individual]; (B) a record of such impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). An employee meets the "regarded as" prong if she establishes that she was subjected to a prohibited action "because of an actual or perceived . . . impairment whether or not such impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The "regarded as" prong includes persons with a past history of drug abuse. *See Nielson v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998); 42 U.S.C. § 12114(b).

An employee may prove that she was discriminated against because of an actual or perceived impairment either by direct evidence or by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Scott asserts that she is relying on direct evidence of discriminatory intent. Direct evidence of a stated purpose to discriminate will overcome a motion for summary judgment. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1991). Direct evidence consists of "comments or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004).

Scott's evidence that Kerns stated Vincent believed Scott had relapsed into drug addiction and should be terminated is direct evidence of discriminatory motive sufficient to overcome a motion for summary judgment. Contrary to Defendant's argument, such statement appears to be admissible as an admission by a party opponent. *See* Fed. R. Evid. 801(d)(2)(C)-(D). Accordingly, Defendant's Motion for Summary Judgment must be denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED.

Signed: October 11, 2012

Graham C. Mullen
United States District Judge